UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MBS ENGINEERING INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BLACK HEMP BOX, LLC, et al.,<br><br>Defendants. | Case No. 20-cv-02825-JD<br><br>**ORDER RE MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 44, 46 |

Defendants Black Hemp Box LLC (BHB), Jesse Kloberdanz, and Dewey Farms LLC (collectively, BHB defendants), and pro se defendant Graham McCarthy, have moved to dismiss the first amended complaint (FAC), Dkt. No. 43, under Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), and 12(b)(6) (failure to state a claim upon which relief can be granted). Dkt. Nos. 44, 46.[1] The parties' familiarity with the record is assumed. The relevant standards for the motions are well-established, and the Court applies them here. *See, e.g.*, *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1030-31 (N.D. Cal. 2019); *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 951-52 (N.D. Cal. 2018).

At the outset, both motions made use of materials outside the pleadings to challenge the factual allegations in the FAC. This is not well taken because a "motion to dismiss under Rule 12(b)(6) is directed to the adequacy of the complaint as it is pleaded." *Heidingsfelder v. Ameriprise Auto & Home Ins.*, No. 19-CV-08255-JD, 2020 WL 5702111, at *4 (N.D. Cal. Sept. 24, 2020). The Court will consider the external materials solely in connection with the parties' jurisdictional disputes. *See McDonald*, 385 F. Supp. at 1031; *Patel*, 290 F. Supp. at 951-52.

---

[1] McCarthy's unopposed request to join in the BHB defendants' motion, Dkt. No. 45, is granted to the extent the arguments made in that motion apply to him.

The lone federal claim in the FAC is alleged under the Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1836 *et seq.* Plaintiffs' first attempt at this claim did not plausibly identify an actionable trade secret. The Court dismissed it with leave to amend, and declined to exercise supplemental jurisdiction over the state law claims. *See* Dkt. No. 40 (citing *Albert's Organics, Inc. v. Holzman*, No. 19-cv-07477-PJH, 2020 WL 1332074, at *3 (N.D. Cal. Mar. 23, 2020)).

The FAC has remedied the prior shortfall. The DTSA defines a trade secret as virtually any kind of information, including "designs, prototypes, methods, techniques, processes, procedures, programs, or codes," that the owner "has taken reasonable measures" to keep secret, and that "derives economic value, actual or potential, from not being generally known." 18 U.S.C. § 1839(3). There is an obvious tension between the right of public access to court proceedings and the "secret" part of a trade secret, and so sensitive details need not be alleged to satisfy Rule 8 so long as the pleadings give adequate notice of the subject matter of the particular trade secret at issue. *See, e.g.*, *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-CV-01409-EJD, 2015 WL 2265479, at *5-6 (N.D. Cal. May 13, 2015).

The FAC meets this standard. It provides concrete information about the design and development of plaintiffs' mobile hemp dryers as the subject matter of the trade secret, *see, e.g.* Dkt. No. 43 ¶¶ 9, 68, 98, describes specific design features of the drivers, and explains that they are "derived from" confidential information, *see id.* ¶¶ 43-49 (discussing, among other things, dryers' ability to harness waste heat, bed design, wastewater filtration system, and remote access capabilities). The FAC alleges that the "design, analysis, use, application, and generation of these innovative and customized mobile hemp dryer(s) are derived from the confidential data developed by Plaintiffs during the design, engineering and manufacturing phases, including trials, testing and troubleshooting processes conducted throughout the fabrication of the subject dryer(s), all of which is confidential information." *Id.* ¶ 49. These statements are enough to put defendants on notice of the nature of the trade secrets at issue. Defendants object that some of the features identified in the FAC are not trade secrets because they are matters of general knowledge, but that is a fact dispute that requires an evidentiary record well beyond the scope of a pleadings motion.

2

Defendants also go too far in saying that the FAC does not plausibly allege that plaintiffs took reasonable measures to keep confidential information about the design and operation of their hemp dryers secret. It does. *See, e.g., id.* ¶¶ 43, 51-52 (plaintiffs required McCarthy and other employees to sign non-disclosure agreements (NDAs) and abide by other policies to maintain secrecy of confidential information); *id.* ¶¶ 43, 53-54 (confidential information was stored on a secure network, password-protected, and shared only on a need-to-know basis). Defendants suggest that plaintiffs' secrecy efforts were legally insufficient because they sold two of their dryers to BHB for resale without prohibiting reverse engineering. *See* Dkt. No. 46 at 10-11. This is an overstatement. Reverse engineering, like independent discovery or accidental disclosure, is a defense to misappropriation, which requires acquiring a trade secret through improper means. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475-76 (1974). It may be that the ease of reverse engineering bears on the question of what secrecy efforts were reasonable under the circumstances, but defendants cite no authority indicating that the mere possibility of reverse engineering by a third-party purchaser necessarily invalidates a trade secret. At most, this raises a fact question that should be resolved at summary judgment or trial.

Apart from the existence of a trade secret, defendants do not meaningfully contest the remaining element of a DTSA misappropriation claim, namely some form of improperly acquiring, disclosing, or using the trade secret. *See* 18 U.S.C. § 1839(5). For the sake of completeness, plaintiffs have satisfied this requirement for present purposes by alleging that McCarthy breached an NDA in order to share information about plaintiffs' dryers with the BHB defendants, as discussed further below, and that the BHB defendants were aware of the NDA. *See* Dkt. No. 43 ¶¶ 10, 66-67, 70-88 (claiming, for example, that McCarthy and Kloberdanz discussed confidential aspects of plaintiffs' dryers over email, and that McCarthy divulged 8,000 pages of protected information to BHB's counsel). Consequently, claim one is adequately pleaded, and so federal question jurisdiction exists under 28 U.S.C. § 1331.

The next issue is whether the Court has supplemental jurisdiction over the remaining claims. The Court has supplemental jurisdiction over any claims that are "so related" to the claims over which it has original jurisdiction "that they form part of the same case or controversy under

1   Article III of the United States Constitution." 28 U.S.C. § 1367(a). This is so when all the claims
2   "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522
3   U.S. 156, 164-65 (1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725
4   (1966)). Claim two alleges trade secret misappropriation under the California Uniform Trade
5   Secrets Act (CUTSA), Cal. Civ. Code §§ 3426, *et seq.*, and claim seven requests a declaratory
6   judgment that plaintiffs own protected trade secrets. These claims arise out of the exact same facts
7   and circumstances as the DTSA claim, and so there is no question that supplemental jurisdiction
8   exists. So too for claims three and four, which concern McCarthy's alleged breach of his NDA.

That leaves claims five and six. Claim five has to do with allegedly outstanding loans plaintiff James gave to Kloberdanz so that Kloberdanz's business, Dewey Farms, could purchase gas turbines. *See* Dkt. No. 43 ¶¶ 56, 122-23. Claim six concerns an equipment purchase agreement whereby BHB agreed to pay plaintiff MBS $550,000 for "certain specified equipment" (which, ironically, is not specified in the FAC), and the BHB defendants agreed to purchase additional hemp dryers. *See id.* ¶¶ 62-65, 125-29. These claims arise out of completely different transactions and events than those giving rise to the trade-secret and breach-of-NDA claims, which center on the alleged disclosure of confidential information by McCarthy to the BHB defendants. While claims five and six do superficially relate to the same hemp dryers at issue in the other claims, the operative question is not whether protected information was improperly disclosed, but whether the BHB defendants satisfied outstanding monetary obligations. These are ordinary state-law commercial disputes that appear from the face of the FAC to have only a tenuous relationship with the federally protected trade secrets underlying the Court's jurisdiction. Consequently, supplemental jurisdiction over claims five and six has not been established, and so these claims dismissed without prejudice. *See Lanning v. Serwold*, 474 F.2d 716, 719 (9th Cir. 1973).

The BHB defendants argue that claims two, four, and seven should be dismissed because they rely on an inadequately pleaded trade secret. Because the Court has concluded otherwise with respect to a trade secret, no further discussion is needed.

The BHB defendants also say that the Court should abstain from deciding the parties' trade secret dispute because some claims in the FAC refer to a subpoena issued in state court litigation

1  between MBS and BHB.  They cite *Younger v. Harris*, 401 U.S. 37 (1971), which determined that
2  principles of federalism counsel against federal judicial intervention into certain types of pending
3  state court proceedings.  *See id.* at 43.

4  To be sure, *Younger* states a vital principle, but the BHB defendants have not adduced a
5  good reason why it might be in play here.  Another vital principle is that the federal courts have a
6  "virtually unflagging obligation" to exercise their jurisdiction.  *Colorado River Water*
7  *Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  The parties did not address the
8  Supreme Court's decision in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013), which held that
9  *Younger* abstention is almost always inappropriate when the parallel state proceeding is civil
10 rather than criminal.  *See id.* at 72-73.  The only exceptions are for quasi-criminal state
11 enforcement actions, such as attorney disciplinary proceedings, and a small class of cases
12 involving court orders that are "uniquely in furtherance of the state courts' ability to perform their
13 judicial functions," such as civil contempt orders.  *Id.* at 73 (quoting *New Orleans Pub. Serv., Inc.*
14 *v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)); *see, e.g.*, *Middlesex Cty. Ethics*
15 *Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434-35 (1982) (attorney disciplinary
16 proceeding); *Juidice v. Vail*, 430 U.S. 327, 335-36 & n.12 (1977) (civil contempt order).  The
17 BHB defendants have shown nothing similar here, and offer purely speculative concerns that these
18 proceedings may require the Court to take actions bearing on discovery disputes in a state breach-
19 of-contract case.  Principles of comity and federalism may come to the fore later in the case, but
20 they are not a sound reason for dismissal at this time.

21 The BHB defendants seek dismissal under Rule 12(b)(2) for lack of personal jurisdiction.
22 The Court would be aided in deciding this issue by a more complete factual record.  Consequently,
23 a brief period of jurisdictional discovery will be permitted.  *See Zithromia Ltd. v. Gazeus Negocios*
24 *De Internet SA*, No. 3:17-CV-06475-JD, 2018 WL 6340875, at *2-3 (N.D. Cal. Dec. 5, 2018).

25 This resolves the BHB defendants' motion to dismiss, Dkt. No. 46.  McCarthy's motion to
26 dismiss, Dkt. No. 44, raises several overlapping issues, and is denied for largely the same reasons.
27 The Court briefly addresses a few arguments raised only by McCarthy.  While McCarthy is right
28 to say that there is not complete diversity of citizenship between the parties, the DTSA

1  misappropriation claim presents a federal question.  Consequently, the Court may exercise
2  supplemental jurisdiction over claim three because McCarthy's alleged breach of an NDA arises
3  out of the same events as the federal trade secret misappropriation claim, as discussed.  *See* Dkt.
4  No. 43 ¶ 27 (invoking supplemental jurisdiction over this claim).

5        The breach-of-NDA claim asserted against McCarthy also clears the Rule 12(b)(6)
6  threshold.  Plaintiffs say that McCarthy signed an NDA with plaintiff BD energy that required him
7  not to disclose confidential information about plaintiffs' technology.  Dkt. No. 43 ¶¶ 66-67.  They
8  also allege facts allowing the Court to plausibly infer that McCarthy breached this agreement by
9  discussing confidential aspects of MBS's technology with defendant Kloberdanz and other third
10 parties, *see id.* ¶¶ 74-77, and that this resulted in lost financial opportunities, *id.* ¶ 88.  Because
11 McCarthy does not meaningfully dispute plaintiffs' allegation that BD Energy fully performed its
12 obligations under the NDA, *see id.* ¶ 109, that is enough to state a claim for breach of contract,
13 regardless of the applicable state law.  *See, e.g.*, *Thomas v. Montelucia Villas*, LLC, 302 P.3d 617,
14 621 (Ariz. 2013) (en banc); *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).

15       McCarthy says that the NDA is unenforceable because it was "substantively
16 unconscionable," and because it was entered into under "false pretenses and duress."  Dkt. No. 44
17 at 4.  But nothing is alleged in the FAC that would allow the Court to draw this conclusion, and
18 McCarthy has not demonstrated that an NDA is *per se* unconscionable under state law.  McCarthy
19 also challenges the factual allegations in the FAC, but as discussed, the Court will not address fact
20 disputes under Rule 12(b)(6).  The Court will address these issues as warranted at summary
21 judgment, trial, or another appropriate stage of the case.

22       Consequently, the Court declines to exercise supplemental jurisdiction over claims five
23 and six, and they are dismissed without prejudice.  The Court defers a decision on personal
24 jurisdiction pending further proceedings.  Discovery related to personal jurisdiction must
25 completed by September 13, 2021.  The stay remains in place in all other respects.  Plaintiffs may
26 file a second amended complaint with respect to personal jurisdiction issues and supplemental
27 jurisdiction over claims five and six by September 27, 2021.  No new claims or parties may be
28

added without leave of Court.  In lieu of amending claims five and six, plaintiffs are free to pursue them in another forum.  Failure to meet this deadline will result in dismissal under Rule 41(b).

**IT IS SO ORDERED.**

Dated: June 16, 2021

JAMES DONATO
United States District Judge